IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 31, 2019 Session

## BONNIE HARMON, ET AL. v. HICKMAN COMMUNITY HEALTHCARE SERVICES, INC.

**Appeal by Permission from the Court of Appeals
Circuit Court for Hickman County
No. 14-CV-6 Deanna B. Johnson, Judge**

_____

**No.  M2016-02374-SC-R11-CV**

_____

In this healthcare liability action, the trial court held that the plaintiffs' sole expert witness was not competent to testify on causation and for that reason granted summary judgment to the defendant.  The plaintiffs then filed a motion to alter or amend, proffering causation testimony from a new expert witness.  The trial court denied the motion to alter or amend, and the plaintiffs appealed.  The Court of Appeals, in a split decision, reversed the trial court's denial of the motion to alter or amend. This Court granted permission to appeal.  A trial court's decision on a motion to alter or amend is reviewed under an abuse of discretion standard; this standard of review does not permit the appellate court to substitute its judgment for that of the trial court.  We hold that the trial court's decision in this case was within the range of acceptable alternative dispositions of the motion to alter or amend and was not an abuse of the trial court's discretion.  For this reason, we reverse the Court of Appeals and affirm the decision of the trial court.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Circuit Court
Affirmed; Judgment of the Court of Appeals Reversed; Case Remanded to the
Circuit Court for Hickman County**

HOLLY KIRBY, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and ROGER A. PAGE, JJ., joined.

C. Bennett Harrison, Jr., and Brian W. Holmes, Nashville, Tennessee, for Defendant-Appellant Hickman Community Healthcare Services, Inc. d/b/a Hickman Community Hospital.

David Randolph Smith, Dominick R. Smith, W. Lyon Chadwick, Jr., and Christopher W. Smith, Nashville, Tennessee, for Plaintiff-Appellees Bonnie Harmon, Edward Fagan, and Jenny Fagan.

# OPINION
## FACTUAL AND PROCEDURAL BACKGROUND

On December 12, 2011, the vehicle in which Pamela Rudder was a passenger was stopped by police for a non-functioning headlight. After Ms. Rudder was found to be in possession of illegal drugs and drug paraphernalia, she was arrested. She was taken to the jail in Hickman County, Tennessee.

While still incarcerated, Ms. Rudder reported that she was suffering symptoms of drug withdrawal, from legal prescribed medication as well as illegal substances. Three days after her arrest, on December 15, 2011, Ms. Rudder received treatment in the jail's medical unit from Tonie D. Cloud, R.N., a nurse employed by Defendant-Appellant Hickman Community Healthcare Services, Inc., d/b/a Hickman Community Hospital (hereinafter "Hickman Community Healthcare" or "Defendant"). After seeing Nurse Cloud, Ms. Rudder returned to her jail cell. Ms. Rudder was seen by Nurse Cloud again, later that same day. Shortly after midnight that same evening, Ms. Rudder was found dead on the floor near the bed in her cell.

On April 11, 2013, Plaintiff-Appellees Bonnie Harmon, Jenny Fagan, and Edward Fagan (hereinafter "Plaintiffs"), all surviving children of Ms. Rudder, filed this healthcare liability suit in the Circuit Court for Davidson County against several defendants, including Hickman Community Healthcare.[1] In the course of the ensuing proceedings, the case against Hickman County Healthcare was transferred to the Circuit Court for Hickman County.[2]

After the case was transferred, Hickman County Healthcare filed a motion for summary judgment, arguing *inter alia* that Nurse Cloud's care of Ms. Rudder complied with the

---

[1] The other named defendants are no longer parties to this action.

[2] The proceedings below are outlined in more detail by the Court of Appeals in its opinion in this case. *See Harmon v. Hickman Community Healthcare Servs., Inc.*, No. M2016-02374-COA-R3-CV, 2018 WL 3267080, at *1–2 (Tenn. Ct. App. June 29, 2018).

applicable standard of care.  This motion was denied.  After further discovery, in September 2015, Hickman County Healthcare filed a renewed motion for summary judgment, arguing in part that they were entitled to judgment as a matter of law on the issue of causation.

Plaintiffs then filed a cross-motion for partial summary judgment on the issues of standard of care and causation.[3]  Plaintiffs' motion and their reply to the Defendant's motion for summary judgment were supported in part by the affidavit of their expert, Martin H. Wagner, M.D., a physician who was board-certified in neurology and psychiatry.  In response, Hickman Community Healthcare challenged Dr. Wagner's competency to testify on the issues; citing Tennessee Code Annotated § 29-26-115(b),[4] it contended Dr. Wagner did not practice a "profession or specialty" that would make his expert testimony relevant to the issues.  Because Dr. Wagner was not competent to give testimony on causation, Hickman County Healthcare maintained, it was entitled to judgment as a matter of law.

The trial court heard arguments on November 2, 2015, and took the matter under advisement.  In late January 2016, the trial court entered an order denying Plaintiffs' motion for partial summary judgment.  The order did not resolve the Defendant's renewed summary judgment motion or its challenge to the competency of Dr. Wagner.

Several months later, in April 2016, the trial court issued its order on the Defendant's renewed motion for summary judgment.  It held that Plaintiffs' sole expert witness on causation, Dr. Wagner, was not competent to provide testimony under

---

[3] Plaintiffs filed a second motion for partial summary judgment that sought to bar the Defendants from relying on the loaned servant doctrine as a defense.  That motion is not at issue in this appeal.

[4] The statute provides:

> No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

Tenn. Code Ann. § 29-26-115(b) (2012).

Tennessee Code Annotated § 29-26-115. It ruled Dr. Wagner's testimony inadmissible, and as a result held that Plaintiffs could not show there was a genuine issue of material fact on causation. For that reason, the trial court granted summary judgment in favor of Hickman County Healthcare.

The next month, in May 2016, Plaintiffs filed a motion to alter or amend the order granting summary judgment to Hickman County Healthcare.[5] In support, Plaintiffs filed an affidavit by Plaintiffs' counsel and a declaration by a different physician expert, Kris Sperry, M.D., a board-certified pathologist. The affidavit from Plaintiffs' counsel asserted that that this evidence was previously unavailable; he claimed that Plaintiffs were unable, through the exercise of due diligence, to obtain an affidavit from Dr. Sperry before the trial court's November 2, 2015 hearing on the Defendant's renewed motion for summary judgment.

In the affidavit, Plaintiffs' counsel explained their position that the evidence from Dr. Sperry was "previously unavailable." He said that the Defendant notified him in early October 2015 that the Defendant intended to challenge the competency of Plaintiffs' expert, Dr. Wagner. Within a few days, Plaintiffs' counsel said, he emailed Dr. Sperry, described as "previously-retained." Days later, after receiving no response from Dr. Sperry, Plaintiffs' counsel sent another email. As of the date of the trial court's hearing, Plaintiffs still had not heard back from Dr. Sperry.

Plaintiffs' counsel noted in his affidavit that, at the summary judgment hearing, he told the trial court that, in the event the trial court ruled that Dr. Wagner was not competent to testify, Plaintiffs would seek to offer evidence from another expert. At the hearing, however, Plaintiffs' counsel maintained to the trial court that it should not be necessary for him to secure testimony from another expert because he believed that Dr. Wagner was competent to testify.

Dr. Sperry finally responded to Plaintiffs in early December 2015. In a voicemail message, Dr. Sperry explained that he had not responded earlier because he had been recovering from a back injury that kept him from working. Eventually, in April 2016, the trial court issued its order granting summary judgment to Hickman County Healthcare, and Plaintiffs filed their motion to alter or amend the next month.

---

[5] Plaintiffs' motion was titled as a "Tenn. R. Civ. P. 54.02 Motion to Revise." The trial court construed it as a Rule 59.04 motion to alter or amend. The Court of Appeals did the same. *Harmon*, 2018 WL 3267080, at *3. In this appeal, the parties treat the motion as one to alter or amend, and we do as well.

The trial court held a hearing on Plaintiffs' motion to alter or amend. It then entered an order denying the motion.

Plaintiffs appealed to the Court of Appeals. In a split decision, the Court of Appeals panel reversed the trial court's denial of Plaintiffs' motion to alter or amend, holding that the trial court had abused its discretion. *Harmon*, 2018 WL 3267080, at *9 (footnote omitted). Judge W. Neal McBrayer filed a dissenting opinion. *Id.* at *19 (McBrayer, J., dissenting).

Hickman County Healthcare then sought permission to appeal to this Court, which was granted.

### ISSUES ON APPEAL

In its request for permission to appeal, Hickman County Healthcare argued that the analysis by the majority on the Court of Appeals was inconsistent with the standard of review for a trial court's discretionary decision. We granted permission to appeal in order to address that issue.

In Plaintiffs' brief to this Court, they seek to raise several additional issues. Most of these arguments were not made to either the trial court or to the Court of Appeals.[6] We deem these issues waived. "Issues not raised in the trial court or in the intermediate appellate courts may be deemed waived when presented to this Court." *Hodge v. Craig*, 382 S.W.3d 325, 334 n.3 (Tenn. 2012) (citing *Brown v. Roland*, 357 S.W.3d 614, 620 (Tenn. 2012); *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn. 2001); *Alexander v. Armentrout*, 24 S.W.3d 267, 273 (Tenn. 2000)).

Plaintiffs also contend that their original expert, Dr. Wagner, was competent to testify on causation and the trial court erred in excluding his testimony and in granting summary judgment to Hickman County Healthcare on that basis. This argument was made to the Court of Appeals, so we address it below.

---

[6] The arguments Plaintiffs make for the first time to this Court are: (1) the trial court's grant of summary judgment, based on the affidavit of Hickman County Healthcare's expert, Donna Seger, M.D., addressed only one alleged cause of death and overlooked other causes of death stemming from Hickman County Heathcare's negligence; (2) the affidavit from Dr. Seger presented by the Defendant did not shift the burden on summary judgment because it did not address causes of death other than drug withdrawal; (3) the trial court's grant of summary judgment was moot because it was based on the second amended complaint, after the trial court had permitted Plaintiffs to file a third amended complaint.

- 5 -

At the outset, we consider whether the Court of Appeals erred in reversing the trial court's denial of Plaintiffs' motion to alter or amend the grant of summary judgment to Hickman County Healthcare. On appeal, Hickman County Healthcare argues that the majority of the Court of Appeals paid lip service to the correct standard of review of the trial court's decision but in reality divested the trial court of its rightful discretion. Plaintiffs maintain that the Court of Appeals applied the correct standard and ask this Court to affirm the intermediate appellate court's decision.

As background for our analysis, we will first review the trial court's decision in detail, and then outline the approach taken by the majority on the Court of Appeals as well as the dissent.

### A.     Trial Court Decision on Motion to Alter or Amend

In the wake of the hearing on Plaintiffs' motion to alter or amend, the trial court entered its order in the form of a memorandum opinion. The opinion included findings of fact, comprised of essentially undisputed facts:

> Plaintiffs were on notice that Dr. Wagner's competency was being challenged yet chose to take the risk of relying solely on his testimony. The Affidavit of Plaintiffs' counsel filed in support of the [motion to alter or amend] reflects that, as early as October 12, 2015, he was on notice that Defendant was going to challenge Dr. Wagner's competency. In addition, on October 27, 2015, Plaintiffs were served with Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment on the issue of causation, which called into question Dr. Wagner's credentials. The matter was then argued at length on November 2, 2015, and taken under advisement by the Court for five months before the Court published a 56 page Order on April 4, 2016.

> Plaintiffs had been in communication with [Dr. Sperry] for over two years prior to the Motions for Summary Judgment being filed, and remained in contact with him afterward. The Affidavit of Plaintiffs' counsel reflects that Dr. Sperry had been retained or consulted by Plaintiffs and a conversation was held concerning Dr. Sperry's medical opinion of the case in June, 2013. The Affidavit reflects that Plaintiffs' counsel contacted Dr. Sperry via email on October 16, and 20, 2015, but they did not hear

- 6 -

back from Dr. Sperry. Plaintiffs' Affidavit further reflects that Plaintiffs received a voicemail from Dr. Sperry on December 1, 2015, informing Plaintiffs that Dr. Sperry had suffered a ruptured disc in his back, which was why he had not been communicating. Plaintiffs did not seek any relief under Rule 56.07 of the Tennessee Rules of Civil Procedure for an extension of time to obtain additional affidavits. Following the Court's April 4, 2016, Memorandum and Order, Plaintiffs obtained Dr. Sperry's Declaration on May 2, 2016, and submitted it to the Court along with its May 4, 2016, Motion to Revise. Plaintiffs did not request a continuance of the November 2, 2015, Hearing on the Motions for Summary Judgment in order to obtain Dr. Sperry's Declaration, Affidavit, or Deposition.

*Harmon*, 2018 WL 3267080, at \*3–4 (quoting trial court's findings of fact). In short, in its finding of fact, the trial court noted that, by the time Hickman County Healthcare put Plaintiffs on notice that it intended to raise an issue about Dr. Wagner's competence, Plaintiffs had been in communication with Dr. Sperry about the case for over two years. Plaintiffs emailed Dr. Sperry but did not hear back from him. Nevertheless, they did not seek a continuance of the summary judgment hearing. After the hearing, when Dr. Sperry responded to Plaintiffs' messages, Plaintiffs still did not ask for a continuance, even though the trial court had not yet ruled on the pending motions.

In its conclusions of law, the trial court first recited the standard for its resolution of Plaintiffs' motion to alter or amend. It outlined the standard set forth in *Stovall v. Clarke*, under which the trial court should consider: (1) the movant's efforts to procure the newly offered evidence when responding to the motion for summary judgment; (2) the importance of the newly offered evidence to the movant's case; (3) the movant's explanation as to why the newly offered evidence was not offered in response to the motion for summary judgment; (4) any unfair prejudice to the respondent; and (5) any other relevant considerations. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003) (citing *Harris v. Chern*, 33 S.W.3d 741, 744 (Tenn. 2000)).

The trial court then applied this standard to the facts. As to the first factor, the movant's efforts to procure the evidence, the trial court found Plaintiffs' efforts wanting:

Plaintiffs did not make a strong effort to obtain Dr. Sperry's Declaration, despite being put on notice that Defendant was challenging Dr. Wagner's competency. Plaintiffs sent two emails to Dr. Sperry on October 16, and 20, 2015, even though Plaintiffs had originally consulted Dr. Sperry in June of 2013. Plaintiffs did not hear back from Dr. Sperry before the Hearing on

the Motions for Summary Judgment. Although Plaintiffs knew they needed Dr. Sperry's testimony, they failed to ask the Court to continue the Motions for Summary Judgment Hearing that was scheduled for November 2, 2015. Instead, Plaintiffs took a gamble and moved forward with the Hearing. Moreover, Plaintiffs had ample time to file for an extension of time to obtain Dr. Sperry's Declaration after the Hearing while the Motion for Summary Judgment was under advisement.

As to the second factor, the trial court recognized that the newly-offered evidence was of high importance to Plaintiffs' case, as Dr. Sperry's medical testimony was necessary for the case to proceed.[7] It expressed incredulity at the paucity of Plaintiffs' efforts in light of this importance:

> Here, the importance of the newly submitted evidence to Plaintiffs' case is high, and Plaintiffs were aware of its importance. Plaintiffs could have submitted the Declaration of Dr. Sperry, along with a contemporaneous Motion to Supplement Plaintiffs' Response to Defendant's Motion for Summary Judgment prior to the Court's ruling, which was not entered for more than five months after the Court took it under advisement. Instead, Plaintiffs chose to await the Court's decision in hopes for a favorable ruling.

The trial court next looked to the third factor, the movant's explanation for failing to provide the new evidence in response to the non-movant's motion for summary judgment. It weighed this factor against Plaintiffs:

> Plaintiffs offer two explanations for why Dr. Sperry's Declaration was not submitted. First, Plaintiffs argue Dr. Sperry was unreachable due to the slipped disk in his back. However, . . . Plaintiffs were free to seek relief for a continuance of the November 2, 2015, [h]earing or an extension of time to obtain additional affidavits or obtain the declaration and file a motion to supplement. Moreover, Plaintiffs had established contact with Dr. Sperry as early as 2013, and communicated with him as late as December 2015, yet chose not to obtain his Declaration nor file an extension of time to do so.

---

[7] In healthcare liability actions, plaintiffs must generally establish that the defendant caused the claimant's injury by expert medical testimony, and failure to do so will likely result in dismissal of the claim. Tenn. Code Ann. § 29-26-115(a)(3), (b).

In addition, Plaintiffs argued at the May 26, 2016, Hearing on the Motion to Revise that Plaintiffs did not believe Dr. Sperry's Declaration was necessary to survive the summary judgment stage, and instead took a calculated risk by relying solely on Dr. Wagner. The Court has previously emphasized in this lawsuit its conviction that the summary judgment stage must be taken seriously. The Court finds that Plaintiffs' choice to rely solely on Dr. Wager's competency was one that carried great importance, and one that Plaintiffs' counsel made consciously with full awareness of the potential consequences. Accordingly, Plaintiffs are responsible for the outcome of that decision.

The trial court commented that it had previously emphasized to Plaintiffs that summary judgment must be taken seriously.

Lastly, the trial court considered whether granting the motion to alter or amend would unfairly prejudice Hickman County Healthcare, concluding that it would: "[I]t would be unfairly prejudicial to [Hickman County Healthcare] to grant Plaintiffs Motion after Plaintiffs had numerous chances to submit Dr. Sperry's testimony or ask for an extension of time during the Summary Judgment phase."

After considering each factor, the trial court denied Plaintiffs' motion to alter or amend. As noted above, Plaintiffs then appealed this decision to the Court of Appeals.

### B. Court of Appeals' Decision on Motion to Alter or Amend

In its opinion, the majority on the Court of Appeals set forth the standard of review of a trial court's decision on a motion to alter or amend:

A trial court's ruling on a motion to alter or amend will be reversed only for an abuse of discretion. An abuse of discretion occurs if a trial court causes an injustice to a party by "(1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence."

*Harmon*, 2018 WL 3267080, at *5 (citations omitted). The appellate court majority then said it would determine whether the trial court had abused its discretion by "using the factors set forth in *Stovall*." *Id.* In doing so, the majority applied the *Stovall* factors to the facts and reached conclusions that differed sharply from those of the trial court.

- 9 -

The majority considered together the first and third *Stovall* factors, i.e., Plaintiffs' efforts to obtain the declaration of Dr. Sperry and their explanation for not submitting it sooner. The majority felt that, in this case, both factors "involved overlapping facts" and would require the same analysis. *Id.* at *5 n.6. It noted that counsel for the Plaintiffs "put the trial court and [Hickman County Healthcare] on notice that they wanted an opportunity to offer such additional expert proof in the event the trial court found that Dr. Wagner was not competent to testify on to the cause of Ms. Rudder's death, which it eventually did." *Id*. at *6. The majority felt that, under the circumstances, Plaintiffs' "desire to avoid incurring the cost of securing Dr. Sperry's assistance was not inappropriate." *Id.* Once the trial court ruled on Hickman County Healthcare's motion, the majority observed, Plaintiffs promptly submitted Dr. Sperry's declaration. *Id.*

Turning to the second factor, the majority on the Court of Appeals emphasized the importance of Dr. Sperry's declaration, describing it as "critical" to Plaintiffs' case. *Id*. After reviewing the elements required to maintain a healthcare liability action, the majority said that, had Dr. Sperry's declaration "been considered by the trial court at the summary judgment stage, a genuine issue of material fact on the element of causation precluding summary judgment to [Hickman County Healthcare] would have been created." *Id*. at *9.

Finally, the majority on the Court of Appeals considered the fourth *Stovall* factor, whether granting Plaintiffs' motion to alter or amend would unfairly prejudice the non-movant, Hickman County Healthcare. *Id*. Asserting that Hickman County Healthcare had "not identified any prejudice" that would result from granting the Plaintiffs' motion, the majority observed that "[t]his is not a case in which the newly submitted evidence was readily available to the Plaintiffs," nor was it an instance "where Plaintiffs were not able to obtain new evidence to support their motion to alter or amend." *Id*. (citations omitted). The majority found an "absence of unfair prejudice" to Hickman County Healthcare. *Id*.

"Given the policy of our courts to hear cases on their merits," the majority concluded that "the interests of justice would have been promoted had the [trial] court granted" Plaintiffs' motion to alter or amend. *Id*. It reversed the trial court's denial of Plaintiffs' motion but affirmed the trial court in all other respects. *Id*. at *19.

In Judge McBrayer's dissent, he emphasized that "[a]ppellate review of discretionary decisions is limited" and that appellate courts should not substitute their judgment for that of the trial court. *Id*. at *22 (citations omitted). Reviewing the facts, the dissent commented that, "[a]lthough the plaintiffs sent two emails to another potential expert witness, Dr. Kris Sperry, in my view the [P]laintiffs might have put forth more

- 10 -

effort, perhaps a phone call to Dr. Sperry's office." *Id*. The dissent was also "troubled by the fact that, after receiving no response from either email to Dr. Sperry, the [P]laintiffs did not pursue the seemingly logical step of requesting a continuance of the hearing on the motion for summary judgment." *Id*. It further observed that Plaintiffs then "waited several months after the hearing on summary judgment, after the trial court had granted summary judgment to the defendant, before submitting the declaration of Dr. Sperry." *Id*. Considering these facts, the dissent opined that the trial court's denial of Plaintiffs' motion to alter or amend "was not outside the range of acceptable alternative dispositions." *Id*.

### C. *Abuse of Discretion on Motion to Alter or Amend*

It is well-settled that a trial court's ruling on a motion to alter or amend may be reversed only for an abuse of discretion. *See, e.g., Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012) (citing *Stovall*, 113 S.W.3d at 721; *Linkous v. Lane*, 276 S.W.3d 917, 924 (Tenn. Ct. App. 2008)). This Court has described the abuse of discretion standard in some detail:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. Thus, it does not permit reviewing courts to second-guess the court below, or to substitute their discretion for the lower court's. The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny.
>
> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted); *see also BIF, a Div. of Gen. Signals Controls, Inc. v. Serv. Const. Co.*, No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (citations omitted) ("The standard

- 11 -

conveys two notions. First, it indicates that the trial court has the authority to choose among several legally permissible, sometimes even conflicting, answers. Second, it indicates that the appellate court will not interfere with the trial court's decision simply because it did not choose the alternative the appellate court would have chosen.").

*Lee Medical* provided the framework for determining whether a trial court has properly exercised its discretion:

> To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions.

*Lee Med.*, 312 S.W.3d at 524–25 (citing *Flautt & Mann v. Council of City of Memphis*, 285 S.W.3d 856, 872–73 (Tenn. Ct. App. 2008) (quoting *BIF*, 1988 WL 72409, at *3)); *see also Vodafone Americas Holdings, Inc. & Subsidiaries v. Roberts*, 486 S.W.3d 496, 514 (Tenn. 2016).

Applying this framework, we look first at whether the factual basis for the trial court's decision is supported by evidence in the record. *Lee Med.*, 312 S.W.3d at 524. Here, the facts pertinent to Plaintiffs' motion to alter or amend are largely undisputed, and the majority on the Court of Appeals did not disagree with the facts recited by the trial court.

The second question in the *Lee Medical* framework is whether the trial court identified and applied the legal principles relevant to its decision on Plaintiffs' motion to alter or amend. *Id.* Because the motion to alter or amend relied on newly-submitted evidence, the trial court utilized the factors articulated in *Stovall v. Clarke*. The majority on the Court of Appeals agreed that these were the correct legal principles for the trial court's decision. *Harmon*, 2018 WL 3267080, at *3. We agree as well.

The real issue in this case is with the third question in the *Lee Medical* framework, whether the trial court's denial of Plaintiffs' motion to alter or amend was within the range of acceptable alternative dispositions. The majority on the Court of Appeals meticulously applied all of the *Stovall* factors to the pertinent facts and determined that, in the interest of justice, Plaintiffs' motion to alter or amend should be granted. *Id.* at *5–

9. This would have been a perfectly valid decision—had it been made by a trial court. However, the fact that the Court of Appeals reached a different result in applying the *Stovall* factors to the facts does not answer the essential question of whether the trial court's decision was "within the range of acceptable alternative dispositions." *Lee Med.*, 312 S.W.3d at 524.

> We have emphasized the limitations inherent in the abuse of discretion standard:

> [T]he abuse of discretion standard of review does not permit an appellate court to substitute its judgment for that of the trial court. Rather, because, by their very nature, discretionary decisions involve a choice among acceptable alternatives, reviewing courts will not second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that the appellate courts would not have chosen. Accordingly, if the reviewing court determines that reasonable minds can disagree with the propriety of the decision, the decision should be affirmed.

*State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019) (citations and quotation marks omitted). Thus, "[a]ppellate courts have the task of articulating the boundaries of the permissible range of the trial court's options." *BIF*, 1988 WL 72409, at *3. Respectfully, the majority on the Court of Appeals failed to do so in this case.

The dissent on the Court of Appeals opined that the trial court's denial of Plaintiffs' motion to alter or amend was not outside the range of acceptable alternative rulings. We agree. The trial court concluded that Plaintiffs' efforts to get in touch with Dr. Sperry, sending him two emails, were not particularly strong. It noted that Plaintiffs failed to ask for an extension of time to try to get in touch with Dr. Sperry. It pointed out that, even after Dr. Sperry finally responded to Plaintiffs' emails, they did not immediately send his declaration to the trial court, even though the trial court had not yet issued its decision.[8] Plaintiffs preferred to wait for the trial court's ruling before incurring the expense of getting a declaration from Dr. Sperry. The trial court

---

[8] *See, e.g.*, *Allstate Ins. Co. v. Kaigler & Assocs., Inc.*, No. M2016-01003-COA-R3-CV, 2017 WL 3841318, at *6 (Tenn. Ct. App. Aug. 31, 2017) (citation omitted) ("Upon our review, Kaigler suffered no injustice, as it had the opportunity to put forth the evidence proffered in the affidavits prior to the entry of summary judgment."); *Denton-Preletz v. Denton*, No. E2010-01756-COA-R3-CV, 2011 WL 5375141, at *8 (Tenn. Ct. App. Nov. 8, 2011) ("Accordingly, we conclude that the trial court did not err in denying the motion to alter or amend . . . because Lender failed to submit a valid reason as to why these allegations were not presented when they were discoverable and available prior to the hearing on the motion for summary judgment.").

- 13 -

characterized this as a "calculated risk" and noted that it had previously emphasized to the parties that summary judgment "must be taken seriously."[9] Weighing these considerations, the trial court decided to deny Plaintiffs' motion. This decision was within the range of acceptable dispositions of the motion to alter or amend.

We hasten to add that we are not holding "that the trial court made the only ruling that we would have deemed within the bounds of its sound discretion." *McCaleb*, 582 S.W.3d at 197. We hold only that the decision it made in this case was "within the parameters of the trial court's sound discretion." *Id*. at 198.

For those reasons, we hold that the trial court's denial of Plaintiffs' motion to alter or amend was not an abuse of its discretion.

### D. Competency of Dr. Wagner to Testify

Plaintiffs also argue that the trial court erred in determining that Dr. Wagner was not competent to testify. A trial court's determination of whether an expert witness is competent to provide testimony is also reviewed under the abuse of discretion standard. *Shipley v. Williams*, 350 S.W.3d 527, 552 (Tenn. 2011); *Davis v. McGuigan*, 325 S.W.3d 149, 168 (Tenn. 2010) (citations omitted).

The majority on the Court of Appeals did not address this issue at length; after analyzing other issues at length, it simply affirmed the holding of the trial court "in all other respects." *Harmon*, 2018 WL 3267080, at \*19. This holding would have included affirming the trial court's decision to exclude Dr. Wagner's testimony. The dissent considered the issue at some length, and also indicated that it would affirm the trial court's decision. *Id*. at \*21.

---

[9] Other courts have done the same. *See, e.g.*, *Wallace v. City of Memphis*, No. W2017-02237-COA-R3-CV, 2019 WL 1988677, at \*4 (Tenn. Ct. App. May 6, 2019) (quoting *Knapp v. Holiday Inns, Inc.*, 682 S.W.2d 936, 940 (Tenn. Ct. App. 1984)) (citing *Bradley v. McLeod*, 984 S.W.2d 929, 932 (Tenn. Ct. App. 1998)) ("Once confronted with a motion for summary judgment, the opponent to the motion cannot take it lightly and is required to demonstrate why granting a motion for summary judgment would be inappropriate."); *Jerles v. Phillips*, No. M2005-1494-COA-R3-CV, 2006 WL 2450400, at \*6 (Tenn. Ct. App. Aug. 22, 2006) ("The non-moving party must fully oppose a motion for summary judgment before it is granted rather than rely on Rule 59.04 to overturn a summary judgment after only weakly opposing the motion.").

In its analysis of the question, the dissent looked at the issues and claims to determine whether Dr. Wagner practiced "a profession or specialty which would make the individual's expert testimony relevant to the issues in the case." *Id*. at \*21 (quoting *Mitchell v. Jackson Clinic, P.A*., 420 S.W.3d 1, 8 (Tenn. Ct. App. 2013)). It explained:

> At issue here is whether drug withdrawal led to or caused Ms. Rudder's death. In opposing the motion for summary judgment, the plaintiffs did not present any evidence that Dr. Wagner could offer relevant testimony on this issue. Dr. Wagner's declarations, report, and CV do not reflect any experience with alcohol and benzodiazepine withdrawals, and there is no other testimony or evidence in the record that the practice of psychiatry or neurology would qualify a doctor to provide relevant testimony on the cause of Ms. Rudder's death. While the plaintiffs were not required to produce an expert in the fields of toxicology, pharmacology, or even drug addiction and withdrawal, the plaintiffs were required to show that their expert's profession or specialty made his testimony relevant to the issue of causation. *See* Tenn. Code Ann. § 29-26-115(b).

*Id*. The dissent concluded that the trial court did not abuse its discretion. We agree. We affirm the trial court's decision excluding Dr. Wagner's testimony on causation and granting summary judgment to Hickman County Healthcare on that basis.

Our holdings pretermit all other issues raised on appeal.

## CONCLUSION

We hold that the Court of Appeals erred in holding that the trial court's denial of Plaintiffs' motion to alter or amend was an abuse of the trial court's discretion. We reverse the decision of the Court of Appeals on the motion to alter or amend and reinstate the judgment of the trial court. We also affirm the trial court's grant of summary judgment to the Defendant. Costs on appeal are taxed to Plaintiffs Bonnie Harmon, Jenny Fagan, and Edward Fagan, and their surety, for which execution may issue if necessary.

_____
HOLLY KIRBY, JUSTICE